IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-00076-FL

| | |
|---|---|
| HOMETOWN PUBLISHING, LLC, )<br>*a New Jersey limited liability company*, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KIDSVILLE NEWS!, INC., )<br>*a North Carolina corporation*, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the motion to dismiss of Defendant Kidsville News! Inc. ("Defendant" or "Kidsville"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [DE-6]. Plaintiff Hometown Publishing, LLC ("Plaintiff" or "Hometown") filed a response [DE-19], and Defendant filed a reply [DE-22]. The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendant's motion to dismiss is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, it is recommended that the motion to dismiss be denied.

## I. PROCEDURAL BACKGROUND

Plaintiff filed this action alleging Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.* ("UDTPA") and committed fraud by omission, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Compl. [DE-1]. Defendant filed the instant motion to dismiss all claims [DE-6], and Plaintiff responded by voluntarily dismissing its fraud by omission claim [DE-18] and opposing dismissal of its UDTPA claim [DE-19]. The court by text order stayed discovery pending resolution of the motion to dismiss,

except for the parties' exchange of initial disclosures. Apr. 17, 2014 Order.

## II. FACTUAL BACKGROUND

The facts taken in the light most favorable to Plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), are as follows. Plaintiff is a limited liability company organized under New Jersey law with its principal place of business in New Jersey. Compl. ¶ 2. Defendant is a North Carolina corporation with its principal place of business in Fayetteville, North Carolina. *Id.* ¶ 3. All or a substantial portion of the events that give rise to Plaintiff's claims transpired within Fayetteville, North Carolina. Compl. ¶ 5.

On or about May 3, 2010, Plaintiff and Defendant entered into a Publisher License Agreement ("Agreement") by which Defendant granted Plaintiff a "a non-exclusive, nontransferable license" to use its trademarks and editorial content in publishing a free children's newspaper entitled KIDSVILLE NEWS!® in certain areas of New Jersey. *Id.* ¶ 17; Agreement [19-1] at 1, 11.[1] Plaintiff sold Defendant the Agreement from Defendant's North Carolina business. Compl. ¶ 9. Under the Agreement, Plaintiff was required to pay Defendant an annual License Fee of $13,800.00 in quarterly installments and, after signing the Agreement, Plaintiff paid Defendant $6,900, which included the quarterly License Fee. Compl. ¶ 19. Plaintiff construes the parties' relationship under the Agreement not as one of licensor and licensee (as the terms of the Agreement state), but rather

---

[1] Although the Agreement is outside of the pleadings, it was referenced in and integral to the complaint and, thus, may be considered without converting the motion to dismiss to one for summary judgment. *See Parker v. Kelly Servs., Inc.*, 4:13-CV-111-FL, 2014 WL 886821, at *3 (E.D.N.C. Mar. 6, 2014) (explaining in the memorandum and recommendation that "a court may consider certain matters outside the pleadings when reviewing a Rule 12(b)(6) motion without converting the motion into one for summary judgment, including documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned.") (citations omitted).

2

as one of franchisor and franchisee and, thus, subject to certain franchise regulations promulgated by the Federal Trade Commission ("FTC"), specifically the FTC Disclosure Requirements and Prohibitions Concerning Franchising, 16 C.F.R. pt. 436 (the "Franchise Rule"). Compl. ¶¶ 10-17. Plaintiff asserts that "[t]he Franchise Rule requires a franchisor to provide prospective franchisees with a complete and accurate basic disclosure document containing twenty categories of information" and that Defendant failed to provide Plaintiff with the disclosure document as required by 16 C.F.R. § 436.2. *Id.* ¶¶ 11-12.

Plaintiff asserts that Defendant violated the UDTPA by holding itself out as a licensor as opposed to a franchisor and by failing to make the required disclosure under the Franchise Rule. *Id.* ¶ 20. Plaintiff also assert that Defendant's actions, for purposes of the UDTPA, violate "established public policy, and are immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff." *Id.* ¶ 23. As a result of the non-disclosure, Plaintiff had no opportunity to "evaluate fully whether there were any red flags which would have cautioned Plaintiff to slow down and evaluate more fully the opportunity being offered by Defendant" and suffered damages in the form of lost money paid to Defendant under the Agreement, as well as consequential damages. *Id.* ¶ 21-22.

### III.  STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-

3

pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

The pleading standard set forth in Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

Plaintiff has voluntarily dismissed its fraud by omission claim and, therefore, the analysis here is confined to the parties' arguments regarding whether Plaintiff has stated a claim under the UDTPA.

To state a claim under the UDTPA, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive act or practice; (2) the defendant's conduct was in or affecting commerce; and (3) the conduct was the proximate cause of an injury to the plaintiff. *Joy v. MERSCORP, Inc.*, 935 F. Supp. 2d 848, 863 (E.D.N.C. 2013) (citing *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). "A party must allege 'substantial aggravating circumstances' to support a claim under the UDTPA." *Id.* (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) & citing *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012)). Furthermore, "[t]he conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to

4

consumers." *Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 798-99 (E.D.N.C. 2009) (citations omitted). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. *Id.* at 799.

Defendant does not argue that Plaintiff has failed to sufficiently allege one of the three elements listed above. Neither does Defendant argue that Plaintiff failed to allege the requisite substantial aggravating circumstances. Rather, Defendant contends, relying on a line of cases following *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987), that the facts alleged here by Plaintiff fall outside the scope of the act because a UDTPA claim is only actionable if the alleged wrongful conduct "has a substantial detrimental impact on the plaintiff's North Carolina operations." Def.'s Mem. [DE-7] at 13 (citations omitted). Defendant further contends that because Plaintiff is a New Jersey entity doing business in New Jersey and Plaintiff alleged no harm to any North Carolina business interest, Plaintiff fails to state a claim within the scope of the UDTPA. Plaintiff counters that this court has previously rejected the proposition that the UDTPA is "available only to plaintiffs whose in-state business operations have been injured." Pl.'s Resp. [DE-19] at 5 (quoting *Hardee's Food Sys., Inc. v. Beardmore*, No. 5:96-CV-508-BR, 1997 WL 33825259, at *3 (E.D.N.C. June 6, 1997)). Defendant in reply urges the court to follow *'In' Porters* and not *Hardee's*. Def.'s Reply [DE-22] at 4-9. The undersigned finds that the court's decisions in the *Hardee's* case and the more recent case of *Verona v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2011 WL 1252935 (E.D.N.C. Mar. 29, 2011), are well-reasoned and applicable to the present case and that *'In' Porters* is distinguishable; thus, the allegations here fall within the scope of the UDTPA.

In the *Hardee's* case, a North Carolina-based franchisor moved to dismiss a UDTPA claim

5

brought by its Nebraska-based franchisee, arguing that the claim was beyond the extraterritorial scope of the Act. 1997 WL 33825259, at *1-2. The court first considered the language of the UDTPA, which it characterized as "broad in scope," and observed that it contains "no geographical restrictions on its applicability." *Id.*, at *2-3. The court also noted that the original UDTPA had been amended to remove language restricting its applicability to dealings "within the state," and that it "has been found applicable 'to the full extent permissible under conflicts of law principles and the Constitution.'" *Id.*, at *3 (quoting *Am. Rockwool, Inc. v. Owens-Corning Fiberglass Corp.*, 640 F. Supp. 1411, 1427 (E.D.N.C. 1986)). The *Hardee's* court also recognized that other federal courts in North Carolina have "applied § 75–1.1 where the out-of-state plaintiff conducts continuing business transactions with an instate defendant and is injured by the defendant's in-state activities." *Id.* (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 945 F. Supp. 901 (W.D.N.C. 1996), *rev'd on other grounds*, 155 F.3d 331 (4th Cir. 1998); *Jacobs v. Central Transp., Inc.*, 891 F. Supp. 1088 (E.D.N.C. 1995), *aff'd in part and rev'd in part*, 83 F.3d 415 (4th Cir. 1996)). Thus, the *Hardee's* court concluded that the alleged claim fell within the scope of the UDTPA where plaintiff's injury resulted from the defendant's "alleged misrepresentations and misconduct, based on decisions which [the defendant] made, in all probability, in North Carolina." *Id.*

In determining the scope of the UDTPA, the *Hardee's* court distinguished the *'In' Porters* line of cases on which Defendant relies. *Id.*, at *3. *'In' Porters* limited the UDTPA's application to activities having "a substantial effect on a plaintiff's instate operations" based on a provision of North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(4), establishing personal jurisdiction over defendants causing in-state injury as a result of out-of-state activity. *Id.* (quoting *'In' Porters*, 663 F. Supp. at 502). The plaintiff in *'In' Porters* was a French company with an exclusive

6

distributorship agreement to distribute in France the products of the defendant, a Delaware corporation whose principal place of business was located in North Carolina. *'In' Porters*, 663 F. Supp. at 495-96. The parties' agreement was negotiated primarily in North Carolina, however, there were no allegations that put the North Carolina dealings of the parties in reaching the agreement at issue, as is the case here. *Id.* Rather, in the *'In' Porters* case it was the defendant's out-of-state conduct at issue. *Id.*; *see Ada Liss Grp. v. Sara Lee Corp.*, No. 06CV610, 2010 WL 3910433 (W.D.N.C. Apr. 27, 2010) (distinguishing *'In' Porters* on the grounds that "the only conduct alleged to have violated the UDTP statute occurred outside the state"). The court in *'In' Porters* was concerned with exceeding the scope of the UDTPA and the limits of the Constitution, specifically the commerce clause and due process; yet, the court determined that the UDTPA could be properly expanded to the full reach of § 1-75.4(4), the section of the North Carolina long-arm statute addressing local injury caused by a foreign act, without violating those limits. *'In' Porters*, 663 F. Supp. at 501-02. However, the conduct at issue in *'In' Porters*–foreign act, foreign injury–was found to be outside those limits. *Id.*

In the present case, § 1-75.4(4) is not at issue because Plaintiff has alleged it was injured as a result of an in-state defendant's in-state conduct, in contrast to *'In' Porters* where there was no allegation that the in-state conduct gave rise to the UDTPA claim. *See* Compl. ¶ 5 ("all or a substantial portion of the events that gave rise to Plaintiff's claims transpired within Fayetteville, North Carolina) & ¶ 9 ("Defendant was at all times relevant hereto, engaged in commerce in the State of North Carolina by selling licensing agreements, *including the Agreement at issue* from Defendant's principal place of business in the State of North Carolina.") (emphasis added). This is consistent with the court's analysis in *Verona* where the court considered claims against a North

7

Carolina corporation by an out-of-state plaintiff and found determinative that "the alleged unfair and deceptive acts also took place in and emanated from [the defendant's] headquarters in Wilmington, North Carolina." *Verona*, 2011 WL 1252935, at *15 (citation and internal quotation marks omitted).

> The jurisdictional basis for in-state wrongs is distinct from that analyzed in *'In' Porters*. The North Carolina long-arm statute explicitly confers jurisdiction (to the allowable limits under the U.S. Constitution) "[i]n any action claiming injury to person or property or for wrongful death within or without this State arising out of an act or omission within this State by the defendant." Section 1–75.4(3), which immediately precedes the section relied upon in *'In' Porters*, is entitled "Local Act or Omission."
>
> Where the alleged conduct occurred within the State, and therefore falls under the clear mandate of the North Carolina long-arm statute, the only further limits on personal jurisdiction are those imposed generally by the due process clause.
>
> In the present case, where [the defendant]—itself a North Carolina resident—is alleged to have committed fraud in North Carolina against [the plaintiff], the question of extra-territorial application of the UDTP statute, which was fatal to the UDTP claim in *'In' Porters*, is simply not at issue. Because the conduct alleged took place in North Carolina, the court does not have to search for an impact on the Plaintiff's state operations or a strong state interest. There is no inquiry into the sufficiency of Plaintiff's relationship to North Carolina in a case involving local acts under 1–75.4(3). Instead the issue of jurisdiction is reduced to the traditional inquiry of whether the jurisdictional statute's provisions comport with the Due Process Clause.
>
> The exercise of personal jurisdiction by a court in North Carolina for acts committed within the state by an in-state resident cannot reasonably be said to unduly burden interstate commerce, or to run afoul of traditional notions of fair play and substantial justice.

*Verona*, 2011 WL 1252935, at *15 (citing *Ada Liss*, 2010 WL 3910433, at *12-14). The above reasoning of *Verona* and *Hardee's*–affirming application of the UDTPA to a domestic corporation who is subject to the laws of this state and who committed the alleged predicate acts within this state–is directly applicable to the present case and, as explained above, the *'In' Porters* case is

8

distinguishable.[2]

Defendant also argues that the court's *American Rockwool* decision considering the scope of the UDTPA supports its view, quoting the following portion of the court's discussion:

> [Plaintiff] is a North Carolina resident . . . incorporated and maintaining its principal place of business in North Carolina. North Carolina has a proper interest in protecting North Carolina based businesses from what it perceives to be unfair tactics of competitors, not only because such businesses are residents of the state, but also because they contribute substantially to the state's tax base and to the employment of its citizens.

Def.'s Reply at 3 (quoting *Am. Rockwool, Inc.*, 640 F. Supp. at 1427). Defendant here omits the remainder of the court's discussion focused on the *American Rockwool* defendant, which was equally important to the court's assessment of whether North Carolina's UDTPA could be applied in a constitutionally permitted manner. The court went on to explain:

> Moreover, [defendant] has been present doing business in North Carolina. In the words of the plurality in *Allstate*:
>
>> By virtue of its presence, [the defendant] can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation in which the company is involved.
>
> 449 U.S. at 317, 101 S. Ct. at 642. In addition, defendant's alleged disparagement of rockwool loosefill as used in manufactured housing, the course of conduct giving rise to the North Carolina statutory and common law claims, was carried out in

---

[2] It is noteworthy that many of the cases on which Defendant relies are out-of-district cases decided prior to *Verona*. *See* Def.'s Reply at 8-9 (citing *Duke Energy Int'l, LLC v. Napoli*, 748 F. Supp. 2d 656, 676-77 (S.D. Tex. 2010); *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004 (E.D. Mo. 2009); *Bondi v. Bank of Am. Corp.*, 383 F. Supp. 2d 587 (S.D.N.Y. 2005); *Starlink Corn Prods. Liab. Litig. v. Aventis CropScience USA*, 212 F. Supp. 2d 828 (N.D. Ill. 2002)). Moreover, of the North Carolina federal decisions on which Defendant relies, including *'In'Porters*, all but one were decided prior to *Hardee's* and the other was decided prior to *Verona*. *Id.* at 4-6 (citing *US LEC Commc'ns, Inc. v Qwest Commc'ns Corp.*, 2006 WL 1367383, at *3 (W.D.N.C. May 15, 2006); *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996); *Dixie Yarns, Inc. v. Plantation Knights, Inc.*, 1994 WL 910955, at *2 (W.D.N.C. Jul. 12, 1994)). Finally, Defendant's attempts to undermine the "precedential value" of *Hardee's* based on the subsequent history of two cases relied upon therein, *Broussard* and *Jacobs*, is unpersuasive where the court in *Verona* reaffirmed its rationale in *Hardee's*. *See Verona*, 2011 WL 1252935, at *15 ("The courts' rationale in *Ada Liss*, *Hardee's*, *Broussard*, and *Jacobs*, albeit articulated somewhat differently in each case, is applicable here . . . .").

9

substantial part in North Carolina. Thus, the application of North Carolina law to all manufactured housing conduct has a rational foundation.

*Am. Rockwool, Inc.*, 640 F. Supp. at 1427. Although the *American Rockwool* court found that conduct within the scope of § 1-75.4(4) falls within the scope of the UDTPA, it did not focus solely on the place of injury. The court also considered from where the conduct giving rise to the harm emanated, which was North Carolina, as is the case here. *Id.* Thus, *American Rockwool* cannot be read to stand for the proposition that the UDTPA is limited only to conduct that would fall within the scope of § 1-75.4(4) or the remainder of the court's discussion would be superfluous. The *American Rockwool* case, therefore, is not patently at odds with the reasoning in *Hardee's* or *Verona* and does not preclude a finding here that the alleged conduct falls within the scope of the UDTPA.

Accordingly, the undersigned finds that Plaintiff's allegations fall within the scope of the UDTPA, and it is recommended that Defendant's motion to dismiss be denied.

## V. CONCLUSION

For the reasons stated herein, it is RECOMMENDED that Defendant's motion to dismiss [DE-6] be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to,

10

Case 5:14-cv-00076-FL Document 23 Filed 10/03/14 Page 10 of 11

and accepted by, the District Court.

    SUBMITTED, this the 3rd day of October 2014.

                                                             Robert B. Jones, Jr.
                                                             United States Magistrate Judge